UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LAURIE GILLESPIE, et al.,

       Plaintiffs,

                                    Case No.  1:13-CV-1320

v.

                                      HON. ROBERT HOLMES BELL

THE CITY OF BATTLE CREEK, et al.,

       Defendants.

_____/

**O P I N I O N**

      This civil rights action against the City of Battle Creek and six law enforcement officers arises out of surreptitious audio and video recording inside the Battle Creek Police Department women's locker room.  (ECF No. 14.)  The City has filed a motion to dismiss, and the  Individual Defendants have filed a motion for partial judgment on the pleadings. (ECF No. 17.)  For the reasons that follow, the motions will be granted in part and denied in part.

**I.**

      The following is a summary of the relevant facts alleged in Plaintiffs' first amended complaint.  (ECF No. 5.)

      Plaintiff Laurie Gillespie was an officer with the City of Battle Creek from April 10, 1989, to March 18, 2013.  (¶¶ 5, 38.)  Plaintiff Jennifer McCaughna has been an officer with the Battle Creek Police Department since June 19, 1989.  (¶ 6.)  Plaintiff Shawn O'Bryant

has been an officer with the Battle Creek Police Department since October 2008.  (¶ 7).

At all relevant times, Defendant Jackie Hampton was the Chief of Police and the highest ranking law enforcement officer for the City of Battle Creek. (¶ 9).  Defendant James Saylor was the Deputy Chief of Police, the coordinator of the patrol division, and second in command of the Battle Creek Police Department. (¶ 10).  Defendant Maria Alonso was an inspector and head of the Internal Affairs Division for the Battle Creek Police Department (Office of Professional Standards).  (¶ 11).  Defendant Randy Reinstein was a deputy inspector and the chief assistant in the Internal Affairs Division of the Battle Creek Police Department (Office of Professional Standards).  (¶ 12).  Sergeant Fickle was an officer with the Battle Creek Police Department Special Investigations Unit. (¶ 13).  Defendant Stephen Bush was a patrol lieutenant of the Battle Creek Police Department.  (¶ 14.)

In November and/or December of 2012, Inspector Alonso received information that money and property had been stolen on various occasions from the women's locker room of the Battle Creek Police Department.  (¶ 15.)  The women's locker room was equipped with a security door.  (¶ 16.) Access to the women's locker room was only available by card access.  (¶ 17.)   On January 15, 2013, after consulting with and receiving the agreement/approval of Chief Hampton, Lt. Bush, and Deputy Inspector Reinstein, Inspector Alonso installed a camera and audio/video recording device in the women's locker room. (¶ 19.)  Defendants acted in concert in installing the audio/video recording device.  (¶ 20.)

On January 16, 2013, the camera recorded Plaintiff Gillespie in her uniform going

through at least two open lockers of other officers. (¶¶ 21, 30.) Plaintiffs do no know how long the camera remained installed. or how many videos ever existed of female officers in the women's locker room. (¶¶ 22-23.) Plaintiffs had no knowledge of any audio and/or video equipment ever being installed for surveillance of the women's locker room. (¶ 24.) The City denied Plaintiff McCaughna's FOIA request for copies of the videotapes. (¶ 25.)

Plaintiff Gillespie was unaware of any taping until she viewed some of the video recordings in a "Garrity hearing" on or about January 24, 2013. (¶ 28.) Defendants Saylor, Alonso, Reinstein, as well as union representatives Brad Duck and Scott Eager, were present during the January 24, 2013 hearing. (¶ 29.) The video was intentionally shown on a large projection screen. It appeared that the tape had been edited, showing Gillespie in her uniform going through at least two (2) open lockers. (¶ 30.) Inspector Alonso suggested that the men turn around because Plaintiff Gillespie would be removing her clothing. (¶ 31.) Defendants continued to play the recording showing Gillespie removing all of her clothing except her underwear. She had no bra on and the recording showed her naked breasts. (¶ 32.) During the screening, Plaintiff Gillespie became extremely embarrassed and began crying. ( ¶ 33.) The recording was played in the presence of Defendants Saylor, Alonso, Reinstein, Brad Duck, and Scott Eager, all males [sic]. (¶ 35.) Defendant Alonso was operating the audio/visual equipment. (¶ 36.) Plaintiff Gillespie was told not to say anything about the recording or she would be fired. (¶ 37.) Plaintiff Gillespie was subsequently fired on March 18, 2013. (¶ 38.)

Plaintiff McCaughna regularly used the women's locker room and could have at various times been recorded in states of undress.  (¶ 40.)  Plaintiff O'Bryant regularly uses the women's locker room and believes she was taped on or about Sunday, January 20, 2013, when she returned from a leave of absence.  (¶¶  42, 43.)

Plaintiffs filed a nine count First Amended Complaint.  Plaintiffs allege eight claims against all defendants:  Count 1, Violation of the Fourth Amendment to the United States Constitution for invasion of privacy; Count 3, civil conspiracy under 42 U.S.C. § 1983; Count 4, violation of the Federal Wiretap Act, 18 U.S.C. § 2520(a);[1] Count 5, violation of Michigan's Eavesdropping statute, Mich. Comp. Laws § 750.539 *et seq.*; Count 6, invasion of privacy/intrusion upon seclusion; Count 7, invasion of privacy/embarrassing private facts; Count 8, negligent infliction of emotional distress; and Count 9, intentional infliction of emotional distress.  Plaintiffs allege an additional claim against the City:  Count 2, Municipal liability under § 1983.

The City moves for dismissal of the complaint against it in its entirety under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  The Individual

---

[1]Although the amended complaint references the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.* and 18 U.S.C. 2520(a), the Court will refer to the applicable statute, 18 U.S.C. §§ 2510-22, as the Federal Wiretap Act.  *See* S. Rep. No. 541, 99th Cong., 2nd Sess. 1986, 1986 U.S.C.C.A.N. 3555, 3555, 1986 WL 31929, S. REP. 99-541 (Oct. 17, 1986) ("The Electronic Communications Privacy Act amends title III of the Omnibus Crime Control and Safe Streets Act of 1968–the Federal wiretap law–to protect against the unauthorized interception of electronic communications."); *Frierson v. Goetz*, 99 F. App'x 649, 650 (6th Cir. 2004) (noting that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2522, is also known as the Federal Wiretap Act).

Defendants move for partial summary judgment on the pleadings under Rule 12(c).

## II.

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The standard of review for a motion for judgment on the pleadings pursuant to Rule 12(c) is the same.  *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

Plaintiffs contend that the Individual Defendants' 12(c) motion should be dismissed as untimely because it was filed before the pleadings were closed.  In response, the Individual Defendants characterize Plaintiffs' argument as a "trick bag construction" that exalts form over substance in light of the fact that Rule 12(b)(6) and Rule 12(c) are reviewed under identical standards.

Plaintiffs' contention is not a "trick bag construction."  Plaintiffs are correct that the Individual Defendants are not technically in a position to bring either a Rule 12(b)(6) or a

Rule 12(c) motion. A Rule 12(b)(6) motion "must be made before pleading," Fed. R. Civ. P. 12(b), and the Individual Defendants had already filed their answer before they filed their motion. (Am. Answ. to Am. Compl., ECF No. 16.) The Individual Defendants' Rule 12(c) motion, on the other hand, is premature. Rule 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *see also F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 642 (6th Cir. 2002) ("Although the parties refer to the judgment as a judgment on the pleadings under Fed.R.Civ.P. 12(c), judgment under that rule was technically unavailable because the government had not filed an answer and thus the pleadings were not closed as required by the rule."). The pleadings in this case are not closed because the City has not filed an answer.

It appears, however, that district courts in this circuit have permitted parties to file post-answer Rule 12(b)(6) motions. *See, e.g.*, *Horen v. Bd. of Educ. of Toledo*, 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009) (construing premature pre-answer Rule 12(c) motion as Rule 12(b)(6) motion to dismiss); *Collins v. Muskegon Cnty. Sheriff's Dep't*, No. 1:05-CV-666, 2007 WL 426586, at *5 (W.D. Mich. Feb. 1, 2007) (noting that it is not improper to treat a premature, pre-answer Rule 12(c) motion as a motion to dismiss under Rule 12(b)(6)). Other courts have agreed to construe a premature Rule 12(c) motion as a Rule 12(b)(6) motion only on grounds that have been raised in their answer. *Telesca v. Long Island Housing P'ship, Inc.*, 443 F. Supp. 2d 397, 405 (E.D. N.Y. 2006) ("Although courts will generally rule on an

untimely motion to dismiss that is filed after the answer, the defendant's previously-filed answer must expressly preserve the defense."); *Anderson v. Sullivan*, No. 03CV4064 (DRH)(MLO), 2005 WL 1123772, at *2 (E.D.N.Y. May 9, 2005) ("In the present case, Defendant clearly moved for Rule 12(b)(2) dismissal after serving his answer. His motion would thus seem facially untimely.  Federal courts, however, will generally make an exception to the above rule, and deem a Rule 12(b)(2) motion timely, if the defendant/movant's previously-filed answer expressly includes the lack of personal jurisdiction as an affirmative defense."); *Molnlycke Health Care AB v. Dumex Med. Surgical Products Ltd.*, 64 F. Supp. 2d 448, 449 (E.D. Pa. 1999) ("The court rejects plaintiff's argument that the motion is untimely. Although the defendant filed this motion after answering the complaint, that answer included lack of venue, lack of personal jurisdiction, and failure to state a claim as affirmative defenses.").  *But see Byrne v. Nezhat*, 261 F.3d 1075, 1093 n. 35 (11th Cir. 2001) (referring to a post-answer Rule 12(b)(6) motion as a nullity).

The Court believes that allowing the Individual Defendants' motion as a post-answer Rule 12(b)(6) motion is appropriate in this case.  The Individual Defendants raised each of the issues presented in their motion to dismiss as affirmative defenses in their answer, (ECF No. 16), and many of their arguments are identical to those raised by the City.  Plaintiffs have not identified any prejudice that would arise from consideration of the Individual Defendants' motion at this time.  Accordingly, the Court will construe the Individual

7

Defendants' motion for partial judgment on the pleadings as a post-answer Rule 12(b)(6) motion, and the Court will consider the motion at this time.

## III.

The City has moved on its own behalf and on behalf of the Individual Defendants in their official capacities[2] to dismiss the complaint in its entirety. The Individual Defendants, in their individual capacities, have moved to dismiss Counts 3, 4, 8, and 9, alleging civil conspiracy, violation of the Federal Wiretap Act, negligent infliction of emotional distress, and intentional infliction of emotional distress. They have also moved to dismiss all counts against Defendants Bush and Fickle, and Counts 6-9 against Defendant Hampton.

### A.  Municipal Liability

In Counts I and II, Plaintiffs seek to hold the City liable for the unconstitutional deprivation of their right to privacy. It is well established that a municipality cannot be held liable under a theory of respondeat superior. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff seeking to impose liability on a municipality under § 1983 is required "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the

---

[2]Plaintiffs have acknowledged that their claims against the Individual Defendants in their official capacity are the same as their claims against the City. (Pls.' Resp. 15, n. 64, ECF No. 15.)  *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.") (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 68 (1989)).

decisions of its duly constituted legislative body or of those officials whose acts  may fairly be said to be those of the municipality." *Id.*  at  403-04.  "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Id.* at 405.

Plaintiffs have not alleged that their rights were violated as the result of any written policy.  Neither have they alleged facts that would support a widespread custom or practice.[3] Plaintiffs' claim against the City is based  solely on their assertion that, because Defendant Hampton was the chief of police and the decisionmaker for the police department, his authorization of the use of the recording device was sufficient to constitute a municipal policy.[4]

_____

[3]"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404.

[4]With respect to their claim of municipal liability, Plaintiffs have alleged:

Chief Jackie Hampton (HAMPTON) is or was the chief law enforcement officer of BATTLE CREEK, the highest ranking law enforcement officer for the City of Battle Creek and the decision maker with regard to the operation of the Department.  HAMPTON'S knowledge and approval of the actions of the other Defendants herein is binding upon Battle Creek and creates municipal liability.

(Am. Compl. ¶ 9.)

The actions of Defendant HAMPTON, the chief law enforcement officer and the decision maker for Defendant BATTLE CREEK in the operation of the

(continued...)

The City objects to Plaintiffs' attempt to impose liability against the City based on a single decision by then-chief of police Hampton allegedly approving the video surveillance. The City contends that Plaintiffs have not alleged facts to show that Hampton had "final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

"Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)). Whether final authority to make municipal policy is vested in a particular official is a matter of state law. *Id.* (citations omitted). "This includes 'state and local positive law,' such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom." *Id.* (citations omitted). In addition, "[o]fficials can derive their authority to make final policy from customs or legislative enactments, or such authority can be delegated to them by other officials who have final policymaking authority." *Id.* (citing *Pembaur*, 475 U.S. at 483 (plurality opinion)).

The City asserts that Plaintiffs have failed to point to any ordinance or other law

---

[4](...continued)
Battle Creek Police Department establishes and constitutes policies, customs and practices of BATTLE CREEK, creating municipal liability.

(Am. Compl. ¶ 59.)

granting the chief of police final authority to establish municipal policy with respect to employee-relations, employee-privacy rights, or any other employment issues.  Further, the City asserts that the chief of police does not have such final authority, as evidenced by the City Charter and Administrative Code which provide that the legislative power of the City is fixed exclusively in the City Commission, that the City Manager is the chief administrative officer and personnel director of the City government, and that all proposed department or divisional rules and regulations must be approved by the City Manager.[5]

In response, Plaintiffs contend that the issue of who possesses "final authority" is a fact intensive inquiry.   Plaintiffs note that the City Administrative Code explicitly requires department heads to adopt and enforce departmental rules and regulations, and that it does not explicitly state that the City Manager has final authority on internal affairs investigations.  Whether the chief of police had final authority involves factual issues relating to Code interpretation, practice, custom, and delegation of duties.

The Court is satisfied that Plaintiffs' claim of municipal liability is based upon more than "a legal conclusion couched as a factual allegation."  *See Twombly*, 550 U.S. at 555.  Plaintiffs' complaint contains sufficient factual matter, accepted as true, to state a claim of municipal liability that is plausible on its face.   Whether the chief of police did in fact have

---

[5]The City has attached selected portions of its City Charter and Administrative Code to its motion.  (ECF No. 15-1.)   A court considering a 12(b)(6) motion may consider materials in addition to the complaint if such are public records or otherwise appropriate for the taking of judicial notice. *Rodney v. LaHood*, 359 F. App'x 634, 637 (6th Cir. 2010) (citing *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

final authority with respect to the manner in which the investigation was conducted involves factual issues that are not before this Court at this time.  Accordingly, the City's motion to dismiss the § 1983 claims asserted against it in Counts I and II will be denied.

## B.  Punitive Damages

Plaintiffs have alleged that "[t]he acts of Defendants were undertaken intentionally, maliciously, recklessly and with callous disregard for Plaintiffs' rights and welfare, entitling Plaintiffs to punitive damages."  (Am. Compl. ¶ 47.)  Punitive damages are included in the relief requested.  (*Id.* at 15.)

The City has moved for dismissal of Plaintiffs' claim for punitive damages because "a municipality is immune from punitive damages under 42 U.S.C. § 1983," even for "the bad-faith actions of its officials."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

In response, Plaintiffs acknowledge that municipalities are generally immune from punitive damage awards, and note that they did not specifically request punitive damages against the City.  Plaintiffs nevertheless contend that because punitive damages are authorized in § 1983 cases, the City's motion should be denied, and the jury instructions can provide the necessary guidance in identifying which Defendants' conduct warrants a punitive damage award.

*Smith v. Wade*, 461 U.S. 30 (1983), the case cited by Plaintiffs, held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's

12

conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56. *Smith v. Wade* was an action against an individual correctional officer. *Id.* at 32. It does not provide authority for entering a punitive damages award against a municipality. Plaintiffs have provided no reason for denying the City's motion to dismiss the punitive damages request as to the City. Accordingly, the City's motion to dismiss the request for punitive damages against the City will be granted because punitive damages are not available against the City as a matter of law.

## C. Conspiracy

The City and the Individual Defendants move for dismissal of Count 3 alleging civil conspiracy under 42 U.S.C. § 1983 based on the intra-corporate conspiracy doctrine.

Plaintiffs do not dispute that, in the context of civil conspiracy claims brought pursuant to 42 U.S.C. § 1985(3), the Sixth Circuit adheres to the intra-corporate conspiracy doctrine. *See, e.g.*, *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008); *Page v. City of Monroe*, 24 F. App'x 249, 252 (6th Cir. 2001); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*, 926 F.2d 505, 509-10 (6th Cir. 1991). The intra-corporate conspiracy doctrine provides that where "'all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy.'" *Amadasu*, 514 F.3d at 507 (quoting *Hull*, 926 F.2d at 510). Plaintiffs nevertheless contend that because they brought their conspiracy claim pursuant to § 1983 rather than § 1985(3), the intra-corporate

13

conspiracy doctrine does not apply.

Plaintiffs have identified only one district court case that declined to apply the intra-corporate conspiracy doctrine to a § 1983 claim. *See Kinkus v. Vill. of Yorkville*, 476 F. Supp. 2d 829, 839 (S.D. Ohio 2007), *rev'd on other grounds*, 289 F. App'x 86 (6th Cir. 2008).

This Court is not persuaded by the reasoning in *Kinkus*. *Kinkus* did not identify any viable rationale for treating claims under § 1983 and § 1985 differently with respect to the intra-corporate conspiracy doctrine. A conspiracy claim under § 1983, like a conspiracy claim under § 1985, requires an agreement between two parties. "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 n.4 (6th Cir. 2010) (quoting *Hull*, 926 F.2d at 509-10); *see also Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339 (6th Cir.1984) (noting that the intra-corporate conspiracy doctrine has been "consistently applied in allegations of conspiracy under the Civil Rights Act."). This Court concludes, as have a majority of courts within this circuit, that the intra-corporate conspiracy doctrine applies to claims under § 1983. *See*, *e.g.*, *Lundy v. City of Pontiac*, No. 12-CV-10965, 2013 WL 5372873, at *8 (E.D. Mich. Sept. 25, 2013) (holding that the intra-corporate conspiracy doctrine barred a § 1983 conspiracy claim against the city); *Audio Visual Equip. & Supplies, Inc. v. Cnty. of Wayne*, No. 06-10904, 2007

14

WL 4180974, at *5 (E.D. Mich. Nov. 27, 2007) (rejecting argument that intra-corporate doctrine did not apply to § 1983 actions); *McBride v. Vill. of Michiana*, No. 4:92-CV-155, 1998 WL 276139, at *13 (W.D. Mich. Apr. 2, 1998) (Quist, J.) (holding that the intra-corporate conspiracy doctrine required dismissal of § 1983 conspiracy claim).

Because Plaintiffs' conspiracy claim is premised on an agreement between employees of the City, the conspiracy claim is barred by the intra-corporate conspiracy doctrine. The City and the Individual Defendants' motion for dismissal of Count 3 alleging civil conspiracy under 42 U.S.C. § 1983 will accordingly be granted.

## D.  Federal Wiretap Act

The City and the Individual Defendants have moved for dismissal of Count 4 alleging violation of the Federal Wiretap Act because Plaintiffs have not alleged that Defendants intercepted any communications.

The Federal Wiretap Act prohibits any person from, among other things, intercepting and disclosing another person's "wire, oral, or electronic communication[s]." 18 U.S.C. § 2520(a). In order to prevail under 18 U.S.C. § 2520, a plaintiff "must show that the oral communications were in fact intercepted, disclosed or used by defendants." *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 659 (5th Cir. 1976).

The facts Plaintiffs have alleged with respect to the Wiretap Act claim include allegations that Defendants installed "a camera and concomitant audio/video recording device;" that Defendants recorded both video and audio communications; that the camera

15

recorded Plaintiff Gillespie at the lockers; that the video of Gillespie going through the lockers was shown to others; that Plaintiff McCaughna regularly used the locker room and could have been recorded in states of undress; that Plaintiff OBryant regularly uses the locker room and believes she was taped.   (Am. Compl. ¶¶ 19, 21, 30, 40, 43, 67.)  Based on these factual allegations, Plaintiffs allege that Defendants violated Plaintiffs' rights under the Wiretap Act because they "intentionally intercepted and disclosed electronic communications made in the women's locker room of the Battle Creek Police Department."  (Am. Compl. ¶ 70.)

Defendants contend that the allegations are insufficient to state a claim under the Wiretap Act because Plaintiffs have failed to allege that their communications were in fact intercepted.  Plaintiffs respond that because they have alleged use of the locker room while unaware of the installation of the audio/video recording device, and because their request for videotapes was denied, their factual allegations are sufficient to raise a right to relief above the speculative level.

Plaintiffs do not allege that they engaged in any "wire, oral or electronic communications" in the locker room, nor do they allege that any such communications were recorded.   Plaintiffs' allegation that an audio recording device was installed may be consistent with the possibility that Defendants recorded their communications, but, without more, it does not allege the necessary element that their communications were recorded. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

16

'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, Plaintiffs' formulaic and

conclusory recitation of the elements of a cause of action under the Wiretap Act in paragraph

70 of their amended complaint does not take the place of factual allegations.  *See Iqbal*, 556

U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555).  At best,

Plaintiffs' allegations create a suspicion of a legally cognizable cause of action under the

Wiretap Act, but their factual allegations have not raised the right of relief above the

speculative level.

Plaintiffs contend that because they have not been provided with a complete copy of

the recordings, they could only plead to a certain degree of specificity in order to preserve

their claim under the Wiretap Act.  Plaintiffs accordingly request that the Court postpone

ruling on the pending Rule12(b)(6) motion so that they can pursue discovery to determine

whether there are facts to support their claim under the Wiretap Act. (Pls.' Resp. 13-14, ECF

No. 19.)

Plaintiffs' request for discovery prior to a ruling on the pending motions to dismiss

is denied.  "While the pleading standard under the federal rules is very liberal, *see* Fed. R.

Civ. P. 8, 'the price of entry, even to discovery, is for the plaintiff to allege a factual predicate

concrete enough to warrant further proceedings, which may be costly and burdensome.'"

*Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521,

530 (6th Cir. 2001) (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).  Defendants' motion to dismiss Plaintiffs' claim under the Federal Wiretap Act will accordingly be granted.

## E.  Immunity from Tort Liability - the City

The City has moved for dismissal of Plaintiffs' state law tort claims alleged against the City in Counts 5-9 pursuant to the Governmental Tort Liability Act, Mich. Comp. Laws § 691.1401-1407(c), which "provides immunity from tort liability to governmental agencies engaged in a governmental function."  *Stanton v. City of Battle Creek*, 647 N.W.2d 508, 510 (Mich. 2002); *Long v. Cnty. of Saginaw*, No. 12–cv–15586, 2014 WL 1845811, at *9-10 (E.D. Mich. May 8, 2014).

In response, Plaintiffs have agreed to withdraw their state law claims (Counts 5-9) against the City.  (Pls.' Resp. 15, ECF No. 19.)  The Court will accordingly dismiss Counts 5-9 to the extent those claims are asserted against the City.

## F.  Negligent Infliction of Emotional Distress

The Individual Defendants move for dismissal of Count 8, alleging negligent infliction of emotional distress.  Defendants contend that such a cause of action is recognized only for bystanders who witness injury to a close relative.

Although Michigan recognizes claims for negligent infliction of emotional distress, such claims are limited to "situations involving the plaintiff's witnessing negligent injury to an immediate family member and suffering severe mental distress causing actual physical

harm." *Akbar v. City of Detroit*, No. 294610, 2011 WL 1485334, at *4 (Mich. Ct. App. Apr. 19, 2011) (citing *Taylor v. Kurapati*, 600 N.W.2d 670, 693 (Mich. Ct. App. 1999)); *see also Teadt v. Lutheran Church Mo. Synod*, 603 N.W.2d 816, 823 n.6 (Mich. Ct. App. 1999) ("Michigan recognizes the tort of negligent infliction of emotional distress only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result."); *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 719-20 (Mich. Ct. App. 1993) (declining to apply the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result).

Plaintiffs' complaint only alleges direct injury to themselves. Plaintiffs do not allege that they witnessed an injury to an immediate family member. Accordingly, they have failed to state a claim for negligent infliction of emotional distress. *See Duran*, 504 N.W.2d at 719-20 ("[W]e find that the tort of negligent infliction of emotional distress is inapplicable where a plaintiff claims to have been injured by publication of false statements about the plaintiff.") (citing *Deitz v. Wometco West Mich. TV, Inc.*, 407 N.W.2d 649, 656 (Mich. Ct. App. 1987)).

Notwithstanding the many appellate cases to the contrary, Plaintiffs cite *Daley v. La Croix*, 179 N.W.2d 390, 395 (Mich. 1970), in support of their contention that Michigan does recognize the tort of negligent infliction of emotion distress under a direct theory where they have alleged physical injury. Plaintiffs have alleged that "[t]he emotional distress suffered

by Plaintiffs physically manifested in symptoms." (Am. Compl. ¶ 93.)

In *Daley*, the Court held that

> where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock.

179 N.W.2d at 395.

The Michigan Court of Appeals has determined that *Daley* did not create a cause of action, but merely allowed damages for emotional distress when the plaintiff prevailed on a negligence cause of action. *McNeil ex rel. McNeil v. Metinko*, No. 194595, 1998 WL 2016585, at *3 (Mich. Ct. App. Mar. 13, 1998). This assessment is in keeping with the many Michigan Court of Appeals cases that have expressly limited negligent infliction of emotional distress claims to claims involving the plaintiff's witnessing of a negligent injury to an immediate family member. The Court will accordingly grant the Individual Defendants' motion to dismiss Count 8 alleging negligent infliction of emotion distress.

## G.  Intentional Infliction of Emotional Distress

The Individual Defendants have moved to dismiss Count 9 alleging intentional infliction of emotional distress based on their contention that Plaintiffs have failed to plead facts that can be deemed to be sufficiently extreme and outrageous.

The Michigan Supreme Court has not officially recognized the tort of intentional infliction of emotional distress, but the Michigan Court of Appeals has accepted intentional

infliction of emotion distress as a viable tort for more than forty years. *See Ross v. Burns*, 612 F.2d 271, 273 (6th Cir. 1980) (citing *Frishett v. State Farm Mut. Ins. Co.*, 143 N.W.2d 612 (Mich. Ct. App. 1966)); *Lucas v. Awaad*, 830 N.W.2d 141, 150 (Mich. Ct. App. 2013). "In order to state a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Teadt*, 603 N.W.2d at 823. "Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 823-24. "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v. Mills*, 536 N.W.2d 824, 833-34 (Mich. Ct. App. 1995) "[T]he case is generally one in which the recitation of facts to an average member of the community would arouse resentment against the actor, and lead the average member of the community to exclaim 'Outrageous!'" *Teadt*, 603 N.W.2d at 824. "It is generally the duty of the trial court to determine whether a defendant's alleged conduct may reasonably be regarded as so 'outrageous.'" *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005). "Where reasonable minds may differ, the question is for the jury." *Id.*

Reasonable minds could differ as to whether recording Plaintiffs in the women's locker room and showing a video of Plaintiff Gillespie partially naked to her male colleagues was sufficiently extreme and outrageous to result in liability. *See*, *e.g.*, *Bernhard v. City of*

21

*Ontario*, 270 F. App'x 518, 519-20 (9th Cir. 2008) (describing the intrusion of installing a covert video surveillance camera in a locker room as "severe").  Accordingly, Defendants' motion to dismiss Count 9 alleging intentional infliction of emotional distress will be denied.

## H.  Bush and Fickle

The Individual Defendants have moved for dismissal of all claims against Defendants Bush and Fickle because the only allegation against Defendant Bush is that he participated in the alleged conspiracy claim that fails as a matter of law and because there are no allegations against Defendant Fickle.

Plaintiffs have alleged that Defendant Bush agreed or approved of the installation of a recording device in the women's locker room (Am. Compl. ¶ 19), and that Defendants Fickle and Bush consulted with each other and acted in concert in determining to install and operate the recording equipment without notice in the women's locker room (Am. Compl. ¶ 63).  Plaintiffs contend that these allegations are sufficient to subject Defendants Fickle and Bush to liability not only for the civil conspiracy claim, but for all other claims as they are directly related to the conspiracy to record Plaintiffs.

Plaintiffs' claims against Defendants Fickle and Bush arguable extend to claims in addition to the conspiracy claim.  At this stage of the litigation, the Court is satisfied that Plaintiffs' claims against Fickle and Bush are sufficient to withstand Defendants' motion to dismiss.  Accordingly, the Court will deny the Individual Defendants' motion to dismiss the claims against Defendants Fickle and Bush.

**I. Immunity from Tort Liability - Chief Hampton**

Defendants move for dismissal of Counts 6-9 as to Chief of Police Hampton on the basis that he is entitled to absolute governmental immunity pursuant to Mich. Comp. Laws § 691.1407(5).

> The Governmental Tort Liability Act provides in pertinent part:
>
> (5) A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Mich. Comp. Laws § 691.1407(5). Michigan "caselaw recognizes that a chief of police, as head of the police department, qualifies as the highest appointive executive official of a level of government." *Petipren v. Jaskowski*, 833 N.W.2d 247, 255 (Mich. 2013); *see also Payton v. City of Detroit*, 536 N.W.2d 233, 242 (Mich. Ct. App. 1995) (noting that a police chief is absolutely immune from tort liability when acting in his executive authority). However, the Michigan Supreme Court has also identified a number of factors that are relevant to the determination whether an action is within the scope of an executive official's authority, including "the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government." *Petipren*, 833 N.W.2d at 255 (quoting *Am. Transmissions, Inc. v. Attorney Gen.*, 560 N.W.2d 50, 52-53 (Mich. 1997)). "This list of factors, while not exhaustive, demonstrates the type of objective inquiry into the factual context that is necessary to

determine the scope of the actor's executive authority." *Id*.  It is premature to determine whether Chief Hampton was acting within the scope of his executive authority with respect to the events at issue in this case.  Accordingly, Defendants' motion to dismiss Counts 6-9 as to Chief Hampton will be denied.

**IV.**

For the reasons stated in this opinion, the motions to dismiss will be granted in part and denied in part.  To the extent the City requests dismissal of Counts 1 and 2, the motion will be denied.  To the extent the City requests dismissal of the claim for punitive damages and Counts 3-9 to the extent they are asserted against the City, the motion will be granted. To the extent the Individual Defendants request dismissal of Counts 3, 4, and 8,their motion will be granted.  To the extent the Individual Defendants request dismissal of Count 9 as to all Defendants, dismissal of Counts 6-9 as to Defendant Hampton, and dismissal of Defendants Bush and Fickle, their motion will be denied.

An order consistent with this opinion will be entered.


Dated: <u>March 30, 2015</u>                              /s/ Robert Holmes Bell
                                                                      ROBERT HOLMES BELL
                                                                      UNITED STATES DISTRICT JUDGE